## HODGES & LEACH vs. CHARLES J. PIKE.

*Action for Services by a Sculptor—Question of Fact.*

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.) *Affirmed.*

This is an action of *assumpsit* brought by the appellee, a sculptor, to recover from the appellants, architects and co-partners, for materials furnished and services rendered them in designing and modelling a statue of Lieut.-Col. Wm. H. Watson, to surmount a monument which has since been erected in the city of Baltimore to the memory of the Maryland soldiers in the war with Mexico.

The erection of this monument was undertaken by the Association of the Mexican War Veterans, who, through a committee of that body, were negotiating with the appellants as architects for a design for the proposed monument. Communication between the parties to this suit was opened June 3rd, 1901, by a letter from Mr. Hodges, one of the appellants, to the appellee, in which he said: "We are at work erecting one large monument in Mount Royal Plaza, Baltimore, and have accepted designs for another to be erected here for the Patriots of the War of 1848. * * * We would have given you a chance on the other monument, but did not then know where to find you, and I write now to know, if we give you a chance, will you enter into it heart and soul? The committee have left everything in our hands as regards the selection of a sculptor. We desire a miniature model complete in every respect; if you have the time and desire to work with us, we will send our drawings and a photograph of the General who is to be placed on the monument. Our time is limited and we must hear from you at once."

On the following day the appellee, from his home in New York, replied by letter, saying: "I appreciate your kindness in letting me into the competition. If you will send photographs, drawings and everything pertaining to the monument, I will get you up a nice sketch immediately, so there will be

no waiting." As there was no reference in Mr. Hodges' let-
ter to any competition, it is not apparent why the appellee
used that expression, but it is clear from the testimony of both
parties that there was no competition, and that question
needs no discussion or consideration.

Mr. Hodges says he informed the appellee that the monu-
ment could not be erected until an appropriation could be ob-
tained from the City Council, and the design and site was ap-
proved by the Art Commission of the city, and on June 10th,
1901, he wrote the appellee, "The committee have limited us
to $10,000, so you may know just how far to go with the
work. The base we have estimated to cost about $5,000, so
you see that leaves about $5,000 for the crowning figure, and
the four smaller ones at the base to be executed in bronze."

The appellee testified that he never went into any competi-
tion for this work; that he understood from Mr. Hodges' let-
ter that the committee had authorized Mr. Hodges to select a
sculptor, and that he had selected and employed him; that he
relied upon $5,000 for the sculptor's work upon the faith of
that letter, and that he would not have gone into it under that
sum, because there was hardly anything in it at that; he ad-
mitted that he knew the appellants were working under a
committee, but said in such cases the sculptor does not look
to the committee, "but to the architect who hires you to do
the work."

He also admitted that later Mr. Hodges told him there
was difficulty in getting the money, and that on April
4th, 1902, while in Mr. Hodges' office, in Baltimore, and at
his request, he wrote him a letter to be shown to the com-
mittee, in which he said: "In answer to your last letter, stat-
ing that there was but $3,000 to model the Watson statue, I
would state that it is impossible for me to do anything meri-
torious for so small a sum. I have figured out carefully what
I will be able to model, and set up in bronze a ten-foot figure
and find the lowest possible sum amounts to $4,000 * * *
The reason I am willing to take this statue at such a small
sum is that I am very much interested in it, and as I am not
busy and it would be my first large commission, I should en-

deavor to come before the public with something good, as my reputation would depend upon it." The appellee testified that when this letter was written all the work sued for had been done, being sketching and modelling, for submission to the committee.

Mr. Hodges testified that he told Mr. Pike that he was working for the Association of the Mexican War Veterans; that as they were disappointed in the appropriation by the City Council, the committee eliminated the four eagles at the base and confined the work of the sculptor to the statue alone, to reduce the cost; that the committee decided they could only pay $3,000 for the statue, and he communicated this to Mr. Pike, and urged him to accept that, as he believed there was more money for him in the commission for the statue alone at $3,000, than for the statue and four eagles at $5,000, but he refused to accept this, which refusal he communicated to the committee, and he was then directed by the committee to look for another sculptor, which he did, and the statue was executed by Mr. Berge for $3,000. He testified that he and Pike were both struggling to get the commission, and that he understood from the appellee's letter of June 4th, that both of them were to take their chances on getting the commission, and that he was to do all he could for the appellee, which he did, and that if the appellee had told him he looked to him for payment, he would not have gone into it with him.

Mr. Berge testified that some time in April, 1902, he made a sketch of this statue for Mr. Hodges, and subsequently received and executed the commission; that the contract price was $3,000, which included the cost of sketches, model, and all; that two payments he received through Mr. Hodges, and one direct from the committee; that he did not expect Mr. Hodges to pay him, but expected to get his money through him from the committee; he also testified that when a sculptor goes into competition, and is not successful, he simply gets back his sketch.

It is apparent from this condensation of the testimony that the appellee's theory was that he was employed directly by the appellants to prepare sketches and models *for them*, and

was authorized to look exclusively to them for payment for such services as should be rendered under that employment, while the contention of the appellants was that he merely undertook to submit to the committee through Mr. Hodges certain sketches and models, his future employment by the committee depending upon their acceptance of his sketches and models, and an agreement upon the price to be paid.

Upon the testimony above the plaintiff offered one prayer, which was rejected, and the defendants offered six, of which the second, relating to the burden of proof was granted, and all the others were rejected, and the Court gave the jury an instruction of its own.

Defendants' first prayer asserted that there was no evidence legally sufficient to entitle plaintiff to recover under the pleadings in the case. This could not be granted without ignoring the conflict of testimony given by plaintiff and Mr. Hodges, and was, therefore, properly refused.

Defendants' third prayer confined the jury to the single question of whether the plaintiff was to submit his sketches to the approval of the committee. This might have been the case, with the result that first approved, he would not secure the commission, and yet defendants might be liable to pay for the sketches.

When a prayer is confined to certain enumerated facts, the effect is to withdraw from the jury all other facts than those mentioned, and if, upon the excluded facts, the jury would be justified in reaching any other conclusion than that required by the prayer, it would be error to grant such prayer. *Haines & Eppley* v. *Pearce*, 41 Md. 233; *Corbett* v. *Wolford*, 84 Md. 429.

The defendants' fifth and sixth prayers are open to the same objections.

The defendants' fourth prayer would inevitably have led the jury to suppose that it referred to an express promise, or assumption of liability, and that if they found from the testimony such facts as would raise an implied promise or obligation, that this would not authorize plaintiff to recover. We think the instruction prepared by the Court and given to the jury fully and fairly covered the law of the case.

Opinion by PEARCE, J., filed November 30th, 1904. Argued by *Richard Bernard*, for the appellants. *Malcolm V. Tyson*, for the appellee.

