# DAVID H. DARRIN *vs.* GEORGE H. WHITTINGHAM.

*Action for Breach of Contract to Sell Shares of Stock—Instructions to the Jury—Proof of Agency—Evidence—General Motion to Strike Out.*

An agreement between plaintiff and defendant, who were the owners of most of the stock of a corporation, provided that in case either party should desire to dispose of any of his shares the other should have the refusal of the stock at the price set by the purchaser. In an action for the breach of this contract the declaration alleged that the defendant had agreed to sell a certain number of his shares to one P for $20,000, and before delivery thereof had refused to sell the same to the plaintiff upon tender of that amount and had previously refused to name the price at which he would sell to plaintiff, and that the plaintiff had been compelled to purchase the shares from P at an advance of $2,500 The defendant's evidence was that, although he gave to P written options on his shares at different prices, the lowest of which was $20,000, yet, in reality, P was only his agent to sell the shares to the plaintiff for the highest price obtainable, and that plaintiff was aware of this fact. But plaintiff's evidence was that he supposed the stock to belong to P when he bought it, in order to prevent the same from falling into the hands of a competitor in business. The trial Court granted plaintiff's prayer instructing the jury that he was entitled to recover if they found that defendant gave an option on his stock at a certain price to P and did not give plaintiff an opportunity to purchase it at that price, and that P got possession of the stock and plaintiff was compelled to pay him a higher price in order to obtain the same. The Court also granted defendant's prayer, which instructed that the plaintiff was not entitled to recover if the jury found that the defendant did not in fact sell his stock to P but that P was merely his agent in effecting the sale to the plaintiff. *Held*, that it was proper to grant these two prayers in connection with each other, and so taken they correctly state the law of the case.

*Held*, further, that another prayer offered by the plaintiff instructing the jury that the different options given by the defendant to P enabled the latter to impose on the plaintiff and entitled him to recover was properly rejected, because it would have tended to mislead the jury as to the real question in the case, which was simply whether or not the transaction between the defendant and P amounted to an actual sale of the former's stock to a purchaser other than the plaintiff.

The fact of the agency of one person for another need not be established by independent evidence but may be inferred by the jury from a variety of facts of whose weight they are to judge. Consequently, a party is

not entitled to have the jury instructed that the proof of agency in the case before them must be clear and conclusive to justify them in inferring its existence, and that the agency cannot be inferred if the proof be slight and inconsistent.

When a witness contends that a particular written contract did not contain his whole agreement with the other party, he is entitled to answer a question relating to that writing in such a way as to exhibit this contention.

After evidence had been admitted without objection, a motion to strike out all of the testimony relating to a certain matter was properly overruled, since some of the testimony was admissible, and also because the objection to the evidence should have been made at time it was offered.

When a party asks to have the jury instructed as to the effect of a segregated portion of the evidence, if found to be true, such instruction, if it concludes with a direction to find in favor of the party asking it must present a proposition which is sound, even assuming all the òther evidence in the case to be true.

*Decided December 4th, 1907.*

Appeal from the Superior Court of Baltimore (SHARP, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Fielder C. Slingluff* and *L. Edwin Goldman*, for the appellant.

*Randolph Barton* and *Randolph Barton, Jr.*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant, Darrin, as plaintiff below, sued the appellee in the Superior Court of Baltimore City for an alleged breach of a written contract and the appellee as defendant filed the general issue plea.

On the trial of the case the defendant, at the close of the plaintiff's testimony, offered a prayer, asking the Court to take the case from the jury for want of legally sufficient evidence, which was refused. The defendant offered no testimony, but rested his case on the plaintiff's evidence, and the jury found in his favor, and from the judgment entered on

their verdict the plaintiff appealed.   The record contains three exceptions, two to rulings upon evidence and the other to the Court's action on the prayers.

The contract sued on was made between the two parties to the suit on November 26th, 1901, when they owned, in equal portions, substantially all of the capital stock of the Automatic Switch Company, for the purpose of regulating sales of the stock to be thereafter made by either of them.  It provides that any sales of the stock to third parties that may be made by mutual consent shall be drawn equally from their respective holdings.   It further provides that in the event either one of them desired to dispose in part or wholly of his holding of the stock the other "shall have the refusal of the stock at whatever selling price has been set by the purchaser," stating that the object of the agreement is to keep the holdings of stock of the two parties "equal at all times except when either party desires to reduce his holdings voluntarily."

The breach of the contract alleged in the declaration is that although the defendant had repeatedly refused when requested by the plaintiff to name a price at which he would sell his shares of the stock to the plaintiff, he had on February 23rd, 1905, offered and agreed in writing to sell to Hollis J. Parks 1,490 shares of the said stock for $20,000 and that before the defendant had delivered the stock to Parks the plaintiff tendered to the defendant $20,000 and demanded that the stock be sold to him (the plaintiff) but the defendant refused, "and the plaintiff was compelled to purchase the said shares of stock from said Hollis J. Parks at the price of twenty-two thousand five hundred dollars ($22,500), that being the lowest price at which the plaintiff could purchase said stock, which was an advance of twenty-five hundred dollars over the price for which the defendant agreed and did sell said stock to said Parks."   It is further alleged in the declaration that the plaintiff, when he tendered the $20.000 to the defendant and demanded the sale to him of the 1,490 shares of stock, "at the same time tendered the defendant consents to the discontinuance of the suits, mentioned in the agreement, between the defendant and said Parks."

The agreements touching the alleged sale of the 1,490 shares from Whittingham to Parks and their purchase from the latter by Darrin were also put in evidence by the plaintiff. Both agreements are dated February 23rd, 1905. The one between Whittingham and Parks gives to the latter a three days' option to purchase the stock at $20,000 and stipulates, in the event of the purchase, for the discontinuance of all pending suits and proceedings between Whittingham and Darrin or Parks or any of them.

The contract between Parks and the plaintiff (Darrin) for the alleged sale by the former to the latter of the 1,490 shares of stock for $22,500 recites that Parks has contracted to pur-chase the shares from Whittingham and that he "is willing to accept the said option and pay the purchase price thereof" and that Darrin is desirous of purchasing the said stock and then contains a formal agreement for its purchase by Darrin from Parks for $22,500. The contract among other things provides, as one of the terms of the sale, that Darrin is to discontinue certain specified suits pending between him and Whittingham and others and that Whittingham and Parks shall discontinue all suits and cancel all bonds and undertak-ings by and between them or either of them and the Auto-matic Switch Company or Darrin or the D. H. Darrin Com-pany. In the last paragraph of the contract Parks agrees that the contract contains nothing inconsistent with his option for the stock from Whittingham, except with reference to the amount to be paid to Whittingham.

There is evidence in the record tending to prove that at the time of the sale of stock to which these contracts relate, the personal relations between Darrin and Whittingham were strained and they were involved in hostile litigation over matters which are not shown to have any relation to this suit.

There is also evidence in the record tending to prove that Whittingham did not, before giving Parks the option to buy the 1,490 shares of stock at $20,000, afford Darrin an oppor-tunity to purchase them at that price, and that Darrin in agreeing to pay Parks $22,500 for the stock did not know that

he was in reality dealing with Whittingham but supposed that the stock belonged to Parks and that he, Darrin agreed to pay the $22,500 for it only to prevent it, as he supposed, from passing into the hands of his competitors in business, and further that when Parks, after the contract for the sale at $22,500, had been made, stated that he was to pay Whittingham only $20,000 for the stock, Darrin demanded of Parks, as being the agent of Whittingham, the delivery to him of the stock for $20,000, and that after such refusal he paid Parks the $22,500 for it in order as he believed, to protect himself.

There is on the contrary evidence, brought out mainly by the cross-examination of the plaintiff, that he well knew, and had testified in another case between him and the defendant that he knew, during all of his negotiations with Parks relative to the purchase of the 1,490 shares of stock that Parks was in fact acting as the representative of Whittingham in the matter and that the latter was negotiating for the sale of his stock through Parks and that he (Darrin) understood and believed at the time of purchasing the stock that the money he paid for it was paid to Mr. Whittingham, less such charge if any as Parks may have made in the matter and that up to the minute when he paid over the money he was fully of the belief that Whittingham owned the stock and Parks was the agent.

The defendant was put upon the stand by the plaintiff and testified that Parks had acted as his agent in selling the 1,490 shares to Darrin and also testified in substance that, in order to get the highest price for the 1,490 shares of stock from Darrin, he had furnished Parks with three options on it, one at $20,000, another at $21,000, and the third at $22,500 with the instruction that Parks was to obtain the best price that Darrin was willing to pay for the stock, but he admitted that up to that time Parks had paid him only $20,000 of the $22,500 received from Darrin for the stock.

At the close of the evidence the plaintiff offered five prayers, of which the Court refused the third, fourth and fifth, and granted the second as offered and the first in connection with

the defendant's second prayer. The defendant offered ten prayers all of which were rejected except the second which was granted in connection with the plaintiff's first prayer.

The plaintiff's first prayer asked the Court to instruct the jury that if they found the making of the contract of November 26th, 1901, between the plaintiff and defendant, and that it was in force on February 23rd, 1905, and "that on that day the defendant gave an option on his said stock to one Parks for $20,000, and did not inform the plaintiff of said option or give him an opportunity to purchase the said stock at said price and that without the knowledge or consent of the plaintiff, the said Parks exercised the said option and got possession of said stock for the said sum of $20,000, and that the plaintiff who desired to purchase said stock was compelled to give the said Parks $22,500 for the same, then the plaintiff is entitled to recover." The defendant's second prayer which was granted in connection with the plaintiff's first is as follows : "If the jury shall find from the evidence that the defendant never in fact sold his stock to Parks but that Parks was merely the defendant's agent in effecting the sale of defendant's stock to the plaintiff then under the pleading and evidence in the case the plaintiff is not entitled to recover."

The plaintiff's second prayer, which was granted, fixed the measure of damages, in the event of a verdict in his favor, at the sum which the jury might find that he was required to pay over and above the sum which the defendant agreed to accept and did accept from Parks for the stock; and authorized the jury to allow interest on said sum from the date of its payment.

The learned Judge below in our opinion committed no error in granting these prayers as they, when taken together, correctly state the law of the case. Nor was any error committed in declining to grant the plaintiff's first prayer otherwise than in connection with the defendant's second one. The plaintiff's first prayer standing by itself was correct as far as it went, but, as it entirely ignored the evidence tending to prove the facts relied on in the defendant's second prayer and

concluded with the statement that the plaintiff was entitled to recover if the jury found the facts stated in the prayer, it would have been improper to grant it as offered.    It is well settled that although either party to a case may ask for an instruction from the Court upon the effect of a segregated portion of the evidence if believed by the jury, such a prayer, if it conclude with a direction to the jury to find in favor of its author, must present a legal proposition which is sound even if the other evidence in the case be found by the jury to be true.  *McTavish* v. *Carroll*, 7 Md. 366; *Walsh* v. *Taylor*, 39 Md. 598; *Haines* v. *Pearce*, 41 Md. 233; *Corbett* v. *Woolford*, 84 Md. 429; *Winner* v. *Penniman*, 35 Md. 168; *Caledonian Ins. Co.* v. *Traub*, 80 Md. 223.

The plaintiff's third prayer was properly rejected because it instructed the jury among other things that the proof of agency between Whittingham and Parks must be clear and conclusive to justify them in the exercise of a reasonable intelligence in inferring its existence and that the agency cannot be inferred if the proof be slight and inconsistent.  The defendant testified categorically that he gave the options to Parks as his agent with instructions to obtain the best price he could for the stock.    The plaintiff himself admitted on cross-examination that at the time of the negotiations he understood that Parks acted as Whittingham's agent and further admitted that on both the 26th of April, 1906, and on November 1st, 1906, he had sworn, in a case between Whittingham and the Automatic Switch Company, that he regarded Parks as Whittingham's agent, and that he had negotiated through Parks with Whittingham early in 1905 for the sale of the latters stock and as a result of the negotiations had paid Parks $22,500 and received from him the stock held by Whittingham.    This proof was not slight or inconsistent in itself and the question of its inconsistency with other testimony on the subject of the agency was one for the jury.  Nor can it be correctly asserted as a proposition of law that the proof of agency must always be clear and conclusive to entitle the jury to find the fact of its existence.   The agency need not be proven as an indepen-

dent fact but it may be inferred from a variety of facts.    This Court has held in different cases that although the testimony as to the fact of the agency may not be full and satisfactory still if it tends to prove the existence of that relation it should be submitted to the jury who are the exclusive judges of its weight.    *Nat. Mechanics Bank* v. *Nat. Bank of Baltimore*, 36 Md. 23; *York Co. Bank* v. *Stein*, 24 Md. 466; *Henderson* v. *Mayhew*, 2 Gill, 263; *Swindell* v. *Gilbert*, 100 Md. 403.

The plaintiff's fourth prayer asked the Court to instruct the jury "that if they find from the evidence that at the time Whittingham gave Parks the written contract or option of February 23rd, 1905, to purchase his stock in the Automatic Switch Company, for $20,000 offered in evidence, Whittingham was willing to sell his stock for $20,000, and that at the same time he gave Parks two other options or contracts to purchase said stock, one for $21,000 and one for $22,500, and that by reason of giving said three options to Parks, Parks was enabled to compel the plaintiff to pay $22,500 for said stock, and at the same time enabled to enforce the defendant, by the acceptance of the option of $20,000, to sell said stock to Parks, and that the defendant did sell his stock to Parks and accepted $20,000 therefor, that then it was the defendant's act which enabled Parks to impose upon the plaintiff, and the plaintiff is entitled to recover."

The defendant specially excepted to the granting of this prayer for want of evidence to prove that he was willing to sell his stock for $20,000, and because no recovery under the pleadings in this case could be had on the hypothesis of the prayer.  This prayer was properly rejected.  The only testimony on the subject of the giving of the three options to Parks was that of the defendant himself who testified: "I gave Parks and Martin as my agents three options on my stock with instructions that they were to obtain the best price they could for the stock," and again "my stock was to be sold for the highest price that Mr. Darrin was willing to pay for the stock"  *  *  * "I will explain why I put those three options in their hands; it was to sell at the highest price they could, and I depended

on them to report the price they were able to get for it.". The real question in the case was whether the transaction between the defendant and Parks amounted to an actual sale of the former's stock to a purchaser other than the plaintiff. If it did the plaintiff was entitled to recover; if it did not he was not entitled to recover. This proposition was fairly and properly put before the jury by the granted prayers. To have granted the plaintiff's fourth prayer in addition to those already granted under these circumstances would have tended to confuse and mislead the jury.

The Court also properly rejected the plaintiff's fifth prayer which instructed the jury that there was no legally sufficient evidence that Parks was acting as the agent of Whittingham when he made the sale of the stock to the plaintiff. The testimony to which we have adverted in this opinion as having gone in without objection was clearly legally sufficient for that purpose.

The first exception to testimony was taken to an answer made by the defendant when on the stand to a question put to him by the plaintiff's counsel. The defendant had testified that he had given the three options to Parks and that the $20,000 option did not show the complete agreement between them. The counsel then said to him "I just asked you the one question, under that agreement you agreed to receive $20,000 for your stock." The witness replied "Under that agreement I agreed to accept $20,000 for my stock provided Darrin would not pay more than $20,000 for the stock." The counsel objected to the answer on the ground "that it is not in this agreement" and moved to strike it out but the Court overruled the motion. There was no error in this action of the learned Judge. The defendant had distinctly testified that the particular option to which the counsel referred did not constitute his complete agreement with Parks and when the effort was made to pin him to that one option he had a right to answer as he did.

The other exception to testimony was to the Court's refusal of a motion to strike out "all of the testimony given by Mr.

Whittingham which has bearing on the two option agreements not offered in evidence he claims he gave Parks." This motion was made after all of Whittingham's testimony had gone in without any objection, except as to the answer which forms the subject of the first exception, and it did not in any way designate or specify the portions of the testimony to which it was intended to refer otherwise than to describe them as *bearing on* the two options. That motion is too broad and indefinite as some portions of his testimony bearing on the two options, as for instance that tending to show that the entire agreement between Whittingham and Parks was partly verbal and partly made up of the option offered in evidence along with the two other options, was plainly admissible. Under these circumstances the motion was properly denied. *Walker* v. *Schindel*, 58 Md. 360. The motion also came too late. After evidence, even though hearsay, has been offered and admitted without objection it is unless 'counsel were unaware of the ground of objection, too late for the Court to instruct the jury that it was not admissible; *Dean* v. *Hancock*, 5 Gill, 120; *Ensor* v. *Bolgiano*, 67 Md. 211; *Barton Coal Co.* v. *Cox*, 39 Md. 31, or to grant a motion to strike it out. *North Bros. et al.* v. *Mallory*, 94 Md. 313; *Davis* v. *Patton*, 19 Md. 128.

Finding no error in the rulings of the Court below we will affirm the judgment appealed from.

*Judgment affirmed with costs.*