# BARNETT SHPRITZ v. BALTIMORE TRUST COMPANY.

*Action on Note—Holder in Due Course—Evidence—Instructions—Lead Pencil Endorsement—Demurrer to Declaration—Statement of Grounds.*

In an action on a note by an endorsee thereof, if there is no evidence legally sufficient to show that plaintiff had knowledge or notice of fraud or want or failure of consideration in the making of the note, it is proper for the court so to instruct the jury.                                                    p. 508

Uncontradicted evidence that the two notes in suit were accepted by plaintiff trust company as part of the collateral for a loan to one who had been obtaining loans from it on similar collateral, consisting of notes of his customers, for several years, that such loans were approved by its proper committee and officer, that the borrower had always paid the loans at maturity, and that when he died plaintiff had one hundred and sixty-five of these customers' notes, deposited by such borrower as collateral, *held,* in the absence of any testimony that plaintiff knew of any defect in the notes, or of any facts putting it on inquiry, sufficient to justify the court in instructing the jury that plaintiff had no notice of fraud or want of consideration in the making of the notes.                              pp. 509, 510

A bank is under no duty to investigate every note pledged with it as collateral, in the absence of some fact or circumstance which would put a holder on notice.          p. 510

On an issue as to whether plaintiff trust company was a holder in due course, there being no evidence that any of plaintiff's employees knew of defects in the notes, the failure of plaintiff's witnesses specifically to state that they did not know in what manner the payee secured the notes would not justify the reversal of a judgment for plaintiff.          pp. 510, 511

That an endorsement was in lead pencil was not an irregularity putting the endorsee on notice of an irregularity in the

note, especially when such method of endorsement was customary with the endorser, as the endorsee knew.                    p. 511

On an issue as to whether a trust company, suing on notes pledged with it as collateral for a loan, was a holder in due course, evidence as to previous dealings between it and the borrower *held* admissible in order to show the circumstances surrounding its acceptance of the notes as collateral.            p. 512

The statement in a demurrer that a particular allegation "is bad pleading" does not satisfy the requirement of Code, art. 75, sec. 9, that in suits under Speedy Judgment Acts the defendant shall state "the specific grounds" for a demurrer to the declaration.                                              pp. 512, 513

*Decided December 1st, 1926.*

Appeal from the Court of Common Pleas of Baltimore City (FRANK and ULMAN, JJ.).

Action by the Baltimore Trust Company against Barnett Shpritz. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*David Ash,* for the appellant.

*G. Ridgely Sappington,* with whom were *Baldwin & Sappington* on the brief, for the appellee.

WALSH, J., delivered the opinion of the Court.

The chief question to be determined in this case is whether the lower court was correct in instructing the jury that there was no evidence in the case legally sufficient to show that the appellee had any knowledge or notice of fraud, or want or failure of consideration, in the making of two one thousand dollar notes given by the appellant to Bernstein, Cohen & Company, and by the latter endorsed to the appellee as collateral security for a loan. The record shows that Max

Cohen, trading as Bernstein, Cohen & Company, and here-inafter referred to as Cohen, conducted a private banking business in Baltimore, that Barnett Shpritz, the appellant, had been a customer of Cohen's for many years, that on July 3rd, 1924, he applied for a loan of $1,000, and that Cohen agreed to grant the loan provided the appellant would pay twelve per cent. on it. To make the transaction appear reg-ular on Cohen's books, he required the appellant to give him two four months notes for $1,000 each, discounted each note for six per cent., and then took the appellant's certified check for $1,000 as a payment of one of the notes, attached the check to the note and placed the check and note in his safe, saying he would keep them there and not use the note for any other purpose during the existence of the loan. When the loan matured on November 3rd, 1924, the appellant re-newed it, giving two new four months notes, one of which was pinned to the certified check given in July. It also appeared that Cohen was a customer of the Baltimore Trust Company, the appellee, and had, since 1917, borrowed con-siderable sums of money from it, or its predecessors, and that at the time of his death, on February 7th, 1925, he owed the appellee $75,000, represented by six notes of varying amounts. One of these notes was a collateral note for $15,000 dated January 21, 1925, and both of the appellant's $1,000 notes, together with various other notes of Cohen's customers, totalling altogether $35,308.92, were pledged with the appel-lee as collateral for the payment of this $15,000 note. Sim-ilar collateral was pledged as security for the payment of three of the remaining notes, the total number of customer's notes pledged being one hundred and sixty-five, and all col-lateral was pledged as security for any debt owed by Cohen to the appellee. All these customer's notes were endorsed by Cohen in lead pencil, were attached to the principal notes, together with an adding machine list showing the amount of each and the aggregate, and the discount clerk of the appellee testified without contradiction that he had handled a great many similar transactions with Cohen over a period of five or six years, the number of principal notes handled being

over one hundred, while the number of notes put up as collateral he thought would exceed two thousand. He also testified that the customary way in which Cohen's notes were discounted was to have the principal note initialed by the proper bank official and then presented to him for discount. He accepted it, checked up the collateral with the list, saw that the collateral notes were all endorsed, and then discounted the note, giving Cohen credit for the proceeds. It further appeared that the $15,000 note of January 21st, 1925, was discounted in this way, that the notes sued on were part of the collateral for that note and were endorsed in lead pencil, which was usual, that the proceeds of the principal note had been credited to Cohen, and that the principal note had not been paid, it having developed after Cohen's death that he was hopelessly insolvent.

The appellee brought suit on the two notes of the appellant under the Speedy Judgment Act for Baltimore City, the declaration containing the common counts and two special counts setting out the terms of each note and alleging each was received in "due course." To this declaration the appellant demurred on the ground that the allegation that the notes were received in "due course" was "bad pleading," and the appellee then filed a motion of *ne recipiatur* as to the demurrer, on the theory that it did not state specifically the grounds on which it was based. This motion was granted by the court and the appellant then filed the general issue pleas, a plea of payment as to one of the notes, and two pleas of set-off for some four or five hundred dollars, which the appellant had on deposit with Cohen at the time of the latter's death. After a bill of particulars had been filed regarding the claim of set-off, the appellee joined issue on the first and second pleas, traversed the plea of payment, and filed the general issue pleas to the appellant's pleas of set-off. The case thereupon proceeded to trial, and resulted in a verdict and judgment in favor of the plaintiff for the full amount of the two notes sued on, with interest, and from this judgment the defendant appealed.

During the course of the trial thirty-nine exceptions were

reserved by the defendant, thirty-eight of them relating to questions of evidence, and the thirty-ninth being taken to the action of the learned court below on the prayers.

The plaintiff's first prayer, which was granted, reads as follows: "The court instructs the jury that if the jury finds from the evidence that the notes sued on were delivered by the defendant to Bernstein, Cohen & Company; that before maturity of said notes said Bernstein, Cohen & Company endorsed the same in blank and delivered the same, with other notes similarly endorsed, to the Atlantic Exchange Bank & Trust Company (the predecessor of the plaintiff, the Baltimore Trust Company) as collateral security for the payment of the note of Bernstein, Cohen & Company, dated January 21st, 1925, for $15,000 offered in evidence; that the Atlantic Exchange Bank & Trust Company discounted said note of Bernstein, Cohen & Company dated January 21st, 1925, and also discounted notes of Bernstein, Cohen & Company dated January 9th, 1925, for $15,000, January 14th, 1925, for $7,500, January 15th, 1925, for $12,500, January 16th, 1925, for $10,000, and that the Baltimore Trust Company discounted a note of Bernstein, Cohen & Company dated February 2nd, 1925, for $15,000; and that said Atlantic Exchange Bank & Trust Company at the time it acquired said notes had no notice of any fraud in the obtention of said notes, or any failure of consideration therein, and that Bernstein, Cohen & Company is indebted on said notes so discounted in a sum in excess of the note sued on with interest, then the verdict of the jury must be for the plaintiff for the amount of the said notes sued on with interest from the maturity thereof to the date of the verdict, to which the jury shall add the protest fees on said notes. And the jury is instructed further that there is no evidence in this case legally sufficient from which they can find that the Atlantic Exchange Bank & Trust Company had any knowledge or notice of fraud or want or failure of consideration in the making of said notes."

If this prayer is correct, it is conceded that the seven prayers offered by the defendant were incorrect, so we will

proceed to a consideration of the plaintiff's instruction rather than prolong this opinion by dealing separately with each of the defendant's prayers.

Section 78 of article 13 of the Code (Negotiable Instruments Act) provides that: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some other person under whom he claims, acquired the title as a holder in due course."

It is apparently conceded that the negotiation by Cohen of the $1,000 note to which the appellant's certified check was attached, constituted a fraud on the latter, and so placed upon the appellee the burden of proving that it acquired this note as a holder in due course. And the appellant contends that the negotiation of the other $1,000 note at a time when Cohen was insolvent was also fraudulent and so placed the same burden on the appellee in regard to that note, and he further contends that the appellee has not sustained that burden as to either note. A special exception based on an alleged lack of evidence, which exception will be considered later on, was taken to the first part of the plaintiff's first prayer, but the correctness of this part of the prayer was not otherwise challenged. The real objection is to the latter part of the instruction, which states that there is no evidence in the case legally sufficient to show that the appellee "had any knowledge or notice of fraud or want or failure of consideration in the making of said notes." We think, however, that the record justifies this instruction, and if it does there is no doubt in this state as to the court's right to grant it. This precise question was involved in the case of *Edelen v. First Nat. Bank,* 139 Md. 413, and Judge Urner, in delivering the Court's opinion, thus disposed of it: "The effect of the transfer to the plaintiff of the burden of proof upon a question of this nature is to make it incumbent upon him to prove the circumstances under which he acquired the instrument upon which he seeks to recover. If the evidence thus offered is uncontradicted, and the proven circumstances do

not admit of a rational inference of knowledge or bad faith
on the part of the plaintiff, the court may rightfully so
instruct the jury.  To adopt the contrary view would mean
that in every suit by an indorsee of a negotiable instrument,
affected by some original infirmity, the question as to whether
the plaintiff acted in bad faith would have to be submitted
to the jury, no matter how conclusively his good faith may
be proven by the uncontradicted evidence.  It is not the mere
denial of knowledge by the plaintiff that entitles him to an
instruction in his favor on such an issue.  But the circum-
stances under which he took the note, and which he has the
affirmative duty to prove after its fraudulent origin has been
shown, must be wholly consistent with the theory that he was
not guilty of bad faith in its acquisition.  This is the theory
upon which the decisions of this Court in such cases have
uniformly proceeded."  And see also *Black v. Bank of West-
minister,* 96 Md. 399, and *Harford Nat. Bank v. Rutledge,*
124 Md. 46.

In the present case the notes in question were negotiated
by Cohen before maturity and for value, and the uncontra-
dicted evidence shows that the appellee accepted them as part
of other collateral from a customer from whom it had been
taking similar collateral for five or six years, that the orig-
inal dealings with this customer had been duly authorized
by the loan committee of the appellee, that subsequent trans-
actions to the number of more than one hundred, including
the one involved in this case, had been approved by the proper
officer of the appellee, that up to the time of the customer's
death he had always met his obligations at maturity, and
that at and prior to the time of his death he owed the appel-
lee.$75,000, represented by six notes of varying amounts,
four of which were collateral notes, for the payment of which
one hundred and sixty-five notes of various customers of
Cohen were pledged as security.  We think these facts suffi-
cient to show that the appellee received the notes sued on in
due course, and as there was not a word of testimony show-
ing that the appellee knew there was any defect in the notes,
and no knowledge of any facts which could reasonably have

put it on inquiry was shown, we do not see any error in the court instructing the jury that there was no such testimony. The appellant contended that there was some duty incumbent on the appellee to investigate each note pledged with it as collateral, and argued that if this had been done in the instant case the appellee would have discovered Cohen's alleged fraud. The difficulty with this argument is found in the fact that there is no such duty, at least in the absence of some fact or circumstance which would put a holder on notice, and if there were such a duty practical banking would become an impossibility. The appellant's special exception to the plaintiff's first prayer stated that there was no evidence, or no legally sufficient evidence, that the plaintiff had no notice of any fraud in the obtention of the notes sued on, or any failure of consideration therein, and this objection is based on the failure of the appellee's witnesses to state specifically that they did not know anything about the manner in which Cohen actually secured these notes. It would probably be better to ask this specific question in cases of this character, but we do not think the failure to do so in this case is of much moment. As was said in the *Edelen* case, supra: "It is not the mere denial of knowledge by the plaintiff that entitles him to an instruction in his favor on such an issue. But the circumstances under which he took the note, and which he has the affirmative duty to prove after its fraudulent origin has been shown, must be wholly consistent with the theory that he was not guilty of bad faith in its acquisition." The circumstances surrounding the obtention by the appellee of the notes sued on in this case are not, in our opinion, susceptible of any reasonable inference of bad faith on the part of the appellee, and in the face of these circumstances we do not think the mere failure of the appellee's servants to state that they actually knew nothing about the acquisition of the notes by Cohen is sufficient to justify a reversal. The appellee is a large banking institution in Baltimore, the notes sued on were pledged with sixty-three others as collateral on a $15,000 loan, and the party pledging them had other loans with numerous other notes pledged as col-

lateral. There is not a word in the record which indicates that any of the appellee's servants had any knowledge whatever of any defect in any of these notes, nor is it reasonable, under the evidence, to think they had any such knowledge, and it would be highly technical and of no substantial benefit to the appellant to remand the case merely for the purpose of having them asked this formal question. We are accordingly of the opinion that the plaintiff's first prayer was correct, and it necessarily follows that the defendant's seven prayers, which state legal propositions at variance with it, were properly refused.

The thirty-eight exceptions taken to rulings on the evidence need not be examined in detail. The appellant, though not waiving any of them, conceded in his brief and at the argument that most of them were correct if the plaintiff's first prayer was sound, and, after a careful examination, we agree with him. The eleventh, fourteenth, fifteenth, sixteenth, eighteenth, twenty-seventh, twenty-ninth, thirty-first, thirty-fifth, and thirty-seventh exceptions all refer to questions arising from the fact that the notes sued on were endorsed by Cohen in lead pencil. The defendant seemed to think that in some way the lead pencil endorsement should have put the appellee on notice that there was some irregularity in the notes, but we cannot accede to this view. In the first place there is nothing irregular about an endorsement being made in lead pencil, and such an endorsement is valid. 8 *C. J.* 352. And, in the second place, since the record shows that this method of endorsement was usual with Cohen, there was nothing about it which could possibly arouse any suspicion on the part of the appellee. We accordingly find no error in the rulings covered by these exceptions. The first exception was to the admission of the notes sued on. Even if there was error in this ruling, it was amply cured by subsequent testimony which came in without objection. The second and third exceptions were to rulings which did not in any way injure the appellant. The fourth, fifth, sixth, seventh and ninth exceptions related to testimony concerning previous dealings between Cohen and the appellee, and in

view of the necessity of the appellee's showing the circumstances surrounding its acceptance of the notes sued on, this testimony was clearly admissible. The rulings covered by the eighth and tenth exceptions were also proper for the same reason. The twelfth, thirteenth, seventeenth, twenty-fifth, twenty-sixth, twenty-eighth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, thirtieth, thirty-second, thirty-third and thirty-fourth exceptions were all taken to the rulings of the court excluding testimony which was either irrelevant or immaterial. The subject of the twenty-eighth exception was the court's refusal to grant a motion of the defendant instructing the jury that there was no evidence that Cohen had received the $75,000 evidenced by the six principal notes. The record shows that these notes were discounted and the proceeds credited to Cohen, and hence the motion was properly refused.

The final question to be considered is the action of the lower court in refusing to receive the defendant's demurrer on the ground that the demurrer was not sufficiently specific. Section 9 of article 75 of the Code (chapter 684 of the Acts of 1920) provides, *inter alia,* that demurrers to declarations filed in suits under Speedy Judgment Acts "shall not be received unless the defendant shall state the specific grounds for the demurrer," and as this suit was brought under the Speedy Judgment Act for Baltimore City, the provision just quoted applies to the defendant's demurrer. The specific ground set out in this demurrer is the statement "that plaintiff is a holder in due course is bad pleading." In holding that this was not sufficient, and declining to receive the demurrer, the learned judge below (Frank, J.) filed a memorandum in which he stated in part: "Is it enough to say that a particular allegation of the declaration 'is bad pleading?' It would obviously not be sufficient to say that the whole declaration is bad pleading. Is the defect corrected by averring that one allegation only is bad pleading? The act of 1920 requires the defendant to 'state the specific grounds for the demurrer.' Pointing out the particular allegation as bad pleading is specific and to that extent the

statute is gratified, but does it state the specific grounds of the demurrer? Upon this precise point I have been referred to, and have found, no direct authority.

"A pleading may be bad for a variety of reasons. Section 2 of article 75 of the Code prescribes that nothing more shall be stated than the facts necessary to constitute the ground of action, defense or reply, that facts only shall be stated and not arguments, or inferences, or matters of law, or of evidence, or of which the court takes notice *ex officio.* A pleading may be bad because it does not state a sufficient cause of action, defense or reply, for duplicity, for departure, for non-joinder, for misjoinder. A plea may be bad because it amounts to the general issue or because it does not traverse or confess and avoid an essential allegation of the declaration. This enumeration of some only of the respects in which a pleading may be bad would seem to lead to the conclusion that an averment that a pleading or a part of it is bad pleading does not state the specific grounds of the demurrer, since the bad pleading may be due to any one or more of so many different grounds of error. Certainly, to fulfill the requirements of the statute, the specific vice which renders the pleading or the portion thereof bad must be indicated."

We concur in the learned judge's conclusion that the demurrer was not sufficiently specific, and should not have been received. See *Stewardson v. White,* 3 H. & McH. 455, and *State v. Green,* 4 H. & J. 542, 543.

Finding no error in the rulings appealed from, the judgment will be affirmed.

*Judgment affirmed, with costs.*