## HOME CREDIT COMPANY *v.* DAVID B. FOUCH ET AL.

### [No. 9, April Term, 1928.]

386

*Decided June 20th, 1928.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Harry E. Karr* and *Francis Key Murray,* with whom were *Karr & Colgan* on the brief, for the appellant.

*J. Cleveland Grice* and *Leo Weinberg,* for the appellees.

Digges, J., delivered the opinion of the Court.

The appellant is a corporation of Baltimore City, its principal business being the purchase of notes from contractors who have done work for owners of homes and have taken notes in settlement for such work, and was the plaintiff below in a suit against the appellees, defendants below, on a note alleged to have been signed by the appellees, dated May 7th, 1925, payable twenty-four months after date, to the order of Twele Electric Company, for the sum of $355.14. The note provides for partial payments of $14.80 per month until the full amount has been paid; that failure to meet any payments when due shall render the installment feature of the obligation void, and the remaining balance shall become immediately due and payable, the makers, in the event of such default, waiving all exemption laws and authorizing any attorney of record to appear in any court and confess judgment for the amount due and payable under the note, plus ten per cent. attorney's fees and costs of suit, and waiving all right of appeal or stay of execution. The note further provides that any extension of time for payment shall not constitute a waiver of any of the rights above mentioned, and expressing "value received." The names signed to this note are David B. Fouch and Laura E. Fouch, with seals opposite their names, and witnessed by R. Steen. Under

the names of the signers is: "Mail address, Weaverton Route No. 31, Brownsville, Md." Endorsed on the back of the note there appears:

"For value received I/we hereby assign the within note and balance due thereunder to the Home Credit Company. Twele Electric Co., per Frederick W. Twele.

Principal. . . . . . . . . . . . . . . $355.14
6/18/25    Paid. . . . . . $14.80
7/16/25    "    . . . . . .  14.80
8/17/25    "    . . . . . .  14.80
9/16/25    "    . . . . . .  14.80    59.20
                     _____
                     $295.94"

No payments having been made by the appellees subsequent to September, 1925, a judgment by confession in favor of the appellant against the appellees for the sum of $325.53, with interest from date and costs, was entered in the Circuit Court for Washington County on May 19th, 1926. In September of that year the defendants filed a motion to strike out the judgment, whereupon the court, on December 20th, 1926, passed an order striking out the judgment and placing the case on the trial docket. Later the case was removed to Frederick County and tried before a jury, resulting in a verdict and judgment for the defendants. From that judgment the appeal here is taken. The exceptions reserved are ten in number, nine to the rulings on evidence, and the tenth to the action of the court on the prayers.

An examination of the record will disclose the circumstances surrounding the alleged execution of the note sued upon to be substantially as follows: A number of people living in the vicinity of Brownsville were approached in the winter or early spring of 1925 by D. F. Willoughby for the purpose of having their homes equipped with electrical wiring and fixtures, and also in respect to the erection of a pole line for a distance of approximately two miles, upon which feeder lines were to be placed so as to make connection with the homes so equipped. Finding that certain of the residents

in that locality were favorable to the project, Willoughby then approached Frederick W. Twele, trading as the Twele Electric Company, and engaged in the business of installing electrical fixtures and connections in homes, stating to him that about five hundred customers would desire their homes electrified; and inquiring if he would do that work. Twele told Willoughby that he was unable to finance an operation of that proportion, because of lack of capital, and it was suggested that dealing with some finance corporation might overcome the difficulty. Twele for some time prior thereto had dealt with the appellant in such matters, and he and Willoughby interviewed the president of the appellant, laying their plan of operation before him, and requesting that his company purchase the notes taken from the owners in payment of work done and materials furnished. The appellant agreed to this, saying in effect that, if upon inquiry the financial responsibility of the proposed note makers was satisfactory, his company would finance Twele, and furnished blank forms of application and satisfaction slips to be used by Twele in connection with the work. The form of contract was not supplied by the appellant, but seems to have been furnished by Willoughby, and contained specifications showing in detail the wiring, fixtures, and outlets to be installed in each customer's home.

It is admitted that the appellees signed such a contract, which was offered in evidence, the wife signing her name, and that of her husband by his direction. The contract provides for the wiring in accordance with the specifications and schedule, and the appellees agreed to pay therefor, at the office of the contractor, $355.14, in twenty-four equal monthly installments of $14.80; and included in the specifications is:

> "24 monthly payments of $14.80 each month. It is understood this pole line may take from 5 to 6 months to complete, 1st payment 30 days from date of starting, or June 25th."

This contract is of the same date as the note; the note, but not the contract, being assigned to the appellant on the 20th day of June following its date. There is evidence on behalf of the plaintiff that after the note in question was assigned to it, to wit, on May 22nd, 1925, there was written and mailed to the defendants a letter, of which the following was testified to be a copy:

"May 22, 1925.

"Mr. David B. Fouch,
  "Weverton,
    "Maryland.
  "Dear Sir: This is to notify you that we have this day purchased the note signed by you and your wife, payable to the order of the Twele Electric Company, and that hereafter all payments are to be made at the office of this Company, 17 W. Saratoga Street. Your first payment will be due and payable June 20, 1925.
              "Very truly yours,
                    "Home Credit Company,
                        "By................."

Receipt of this letter was denied. It was testified that a card was enclosed with the letter, but no reference was made in the letter to the card. Receipt of this card was admitted. It was a form prepared by the appellant, upon which at the time of the trial there appeared:
  "Name:   David B. Fouch.
  "Address: Weverton, Route No. 1, Brownsville, Md.
              "In account with
              "Home Credit Company.
  "Amount of Contract, $355.14.   Date May 20, 1925.
  "Amount to be paid monthly, $14.80.       Twele."

Then there appear receipts for payments coinciding with the credits on the note. The card also contains:
  "Payments must be made according to contract at 17 West Saratoga Street. Always bring this card with you. Do not fold this card."

It was enclosed in an envelope upon which appears:

"Important—Do not fold this card. Always bring this card with you. Kindly remove from envelope when making payments. Payments are to be made at this office. 17 W. Saratoga Street."

The record further discloses that at the time the appellant received the note in question, and before the same was discounted, it also received what is designated a "satisfaction slip," which says:

"Satisfaction Slip. This is to certify that Twele Electric Co., contractor, has completed all of the work on the part of the said contractor to be performed under and by virtue of the contract entered into by me (us), and I (we) hereby acknowledge the negotiable note in the amount of $........, signed by me (us) given in payment of the amount due for the work completed under the said contract. David B. Fouch. Laura E. Fouch. Witness—Harry Reach."

The appellees deny signing this satisfaction slip, but acknowledge the payments to have been made by them as recorded on the card and note, saying that these payments were not made by them or either of them personally, but were made for them by Frank M. Hoffmaster, a neighbor who had signed a similar contract, at the office of the appellant.

The plaintiff offered three prayers and the defendants five. The trial court granted the plaintiff's first and third prayers and rejected its second; granted the defendant's first, second and third prayers and rejected their "A" and "B" prayers, which latter two asked for an instructed verdict for the defendants. The plaintiff filed a special exception to the defendants' third prayer.

The defense in this case was forgery and fraud. It is conceded by the plaintiff that proven forgery would vitiate the note. As to fraud, the appellant contends that it is a holder in due course. The appellees deny this contention, for the reason that the plaintiff had, at the time of its purchase, knowledge of the fraud, or knowledge of such facts as would

put it upon inquiry, which inquiry would result in the discovery of fraud. There is no evidence of actual notice of fraud on the part of the appellant, but one of the facts within its knowledge, which it is contended required investigation, and which investigation would result in the acquisition of knowledge of fraud, was that the appellant knew that the building of the pole line was a part of the consideration given for the note; that is to say, they contend that the knowledge that the pole line was contracted to be built, and had not been constructed at the time it purchased the note, was sufficient to put it on notice of possible fraud in the inception of the contract. The soundness of this contention has been denied by this court in the cases of *Black v. First Nat. Bank,* 96 Md. 399, and *Shpritz v. Balto. Trust Co.,* 151 Md. 503.

By the plaintiff's second prayer, which was rejected, the court was asked to instruct the jury that, if they found that the signatures of the defendants to the note sued on were not forgeries, their verdict should be for the plaintiff, even though they should further find that, at the time of the purchase of the note by the plaintiff, the plaintiff knew that under the contract there was a pole line to be built, and that at that time it had not been constructed. The latter part of the prayer submitted the legal proposition that a note signed, payable in installments, for work yet to be done, of which the plaintiff had notice at the time the note was negotiated to it, did not constitute it a holder with knowledge of such an infirmity as would vitiate the note. This legal proposition has been determined by this court to be sound. In the case of *Black v. First Nat. Bank, supra,* at page 418, in which the court was dealing with a plea seeking to prevent recovery because of knowledge by the plaintiff, who was claiming to be a holder in due course, of the contract between the maker and the payee of the note, in which contract certain things were stipulated to be done in the future, the court said: "The plea avers knowledge by the plaintiff of the terms of this agreement when the notes were taken, but contains no averment of breach and notice of breach before the

plaintiff took the notes and parted with its money on their faith and credit. Upon principle, it would seem that this must constitute a fatal defect in the plea, and the authorities sustain this view. The rule is stated thus in *U. S. Nat. Bank v. Floss,* 38 Ore. 68 (62 Pac. 751) : 'The breach of an executory agreement which forms the consideration of a negotiable note, is not a defense in whole or in part against an endorsee who took the note for value before maturity, even if he had notice of the contract, unless he was also informed of the breach before its purchase.' In *Davis v. McCready,* 17 N. Y. 233, the reasons upon which this rule rests are well stated in an opinion by Judge Denio. In that case, the consideration for the acceptance of a bill of exchange was the sale of a brig, accompanied by an executory agreement of the vendor to make such repairs as would render her seaworthy. The defense was that this agreement had not been performed; but the court said: 'The plaintiffs were not bound to follow up the transaction between the original parties to the bill. To hold otherwise would attach an inconvenient and repugnant condition to such an acceptance. By accepting simply and unconditionally a negotiable bill, the defendants are to be held as intending to give it *all* the qualities of commercial paper, *one* of which is that it shall circulate freely for the purposes of business, and be available in the hands of any holder for value. To decide that one who proposed to purchase it and who had a knowledge of the transaction upon which it was given, must await the consummation of that transaction, would essentially impair its character and legal effect.' " To the same effect see *Arthurs v. Hart,* 17 How. (U. S.), 6. The principle laid down here has been recently re-affirmed in the case of *Shpritz v. Ballo. Trust. Co., supra.*

Under the provisions of the Negotiable Instruments Act, every holder of a note is deemed *prima facie* to be a holder in due course. Code, art. 13, sec. 78. Under the above authorities it seems clear that the fact that the holder of a negotiable instrument has knowledge that there is an executory contract between the original parties to the instrument, does not pre-

vent it from being a holder in due course; the law being that, in order to constitute such an infirmity as would render one a holder not in due course, it must be shown that there was a breach of the contract, and that such breach was known to the holder at the time he purchased the note and parted with his money therefor.

In this case there is evidence that the plaintiff knew of the contract or agreement for the building of the pole line, and that it had not been built at the time it purchased the note, but there is no evidence tending to prove that at such time the plaintiff knew of any breach in the agreement in respect to the building of the pole line; and it is conclusively demonstrated that there could have been no breach in that respect at the time of the purchase, for the reason that under the agreement it was stated to be understood that the building of the pole line might require a period of five or six months, and this period within which it might be built had only just begun to run at the time of the purchase of the note. It therefore follows that, if there was no other evidence in the case of the plaintiff's knowledge of fraud or infirmity which would vitiate the note, the plaintiff was entitled to the instruction sought in its second prayer. It is true that the lower court granted a prayer on behalf of the defendants in which the jury was instructed "that if they should find that the defendants signed their signatures upon the promissory note sued upon in this case, and shall further find that said note was obtained from the defendants by fraud, then the burden of proof is on the plaintiff to show that it became the holder of said note before it was overdue in good faith for value, and without notice of any infirmity or defect in the title of the person negotiating it to the plaintiff, and unless the jury believes from the evidence that said note was thus acquired by the plaintiff, then their verdict should be for the defendants." This prayer is a correct statement of the law, but upon such an instruction being granted at the instance of the defendant, the plaintiff was entitled to have the jury instructed that evidence of its knowledge, at the time of its purchase of the note, as to the necessity for building a

pole line thereafter, did not, standing alone, constitute a condition preventing recovery. In other words, the jury should have been instructed that evidence showing the plaintiff's knowledge of the agreement to construct the pole line did not prevent its recovery, unless, in addition, they further found that there had been a breach in the agreement to construct the pole line and that the plaintiff knew of this breach at the time it purchased the note.

The plaintiff's second prayer was, in our opinion, properly rejected, because it was an instruction requiring a verdict for the plaintiff in event the jury found there was no forgery. In other words, it confined the case to the single issue of forgery, disregarding evidence which, in our opinion, was sufficient to go to the jury tending to prove that the plaintiff was possessed of much of the knowledge had by Twele and Willoughby in respect to the entire transaction. There being evidence of fraud in the transaction between the original parties at the time of the making of the note, we hold, first, that the evidence as disclosed by the record is sufficient to predicate a prayer in respect to the plaintiff's knowledge of fraud, placing upon the plaintiff the burden of showing that it acquired the note in good faith, before maturity, for valuable consideration, and without knowledge of any infirmity in the title of the party negotiating it; and, second, that the plaintiff was entitled to an instruction that the contract or agreement providing for the building of a pole line, which had not been built at the time of its purchase of the note, by itself did not constitute such an infirmity as would render it not a holder in due course.

What we have said in reference to the plaintiff's second prayer and the defendants' third prayer is predicated upon the assumption that the jury find from the evidence that there was no forgery. The defendants' second prayer is, in effect, an instruction that if the jury find that the defendants' names were forged to the note, their verdict should be for the defendants. The statement contained in this prayer is, in our opinion, too broad, because the law is well settled that, even though the signature to a negotiable instrument be a

forgery, circumstances may be shown such as would preclude the defendant from setting up forgery as a defense. Section 42 of Article 13 of the Code (Negotiable Instruments Act) provides: "Where a signature is forged, or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority." The word "precluded," as used in this section, is synonymous with the word "estopped," and it does not include ratification or adoption in their strict primary meaning, but only when they involve some elements of an estoppel. *Olsgard v. Lemke,* 32 N. D. 551. It seems well settled that estoppel precludes the defense of forgery, and may arise from conduct, silence, or laches, if by such conduct or silence the holder was misled to his prejudice. 5 *Uniform Laws Annotated,* 105; 25 A. L. R. 172; *Kole v. Lampen,* 191 Mich. 156; *Corwith First State Bank v. Williams,* 143 Iowa, 177, 136 Am. St. Rep. 759, 23 L. R. A. (N. S.), 1234; *Kaufman v. Helmich,* 212 Ill. App. 10. In *First Nat. Bank v. Wolfe,* 140 Md. 477, this court, speaking through Judge Pattison, said: "The law applicable to cases of this character is that one by his conduct, or even by mere silence, may estop himself from defending against the payment of a note on the ground that the signature thereto was a forgery, if it be shown that the holder, in relying thereon, was misled thereby to his injury, provided it be further shown that it was the duty of the party, and he had an opportunity, to speak."

The defendants' second prayer wholly ignores the principle of estoppel, and requires that the jury find for the defendants if they believe their signatures to the note in question were forgeries. There is evidence in the case that the satisfaction slip was signed by the defendants, in which they acknowledged that they had signed a negotiable note,

and that this satisfaction slip was presented to the appellant before it discounted the note. The jury were entitled to believe this evidence, and if they did believe that the satisfaction slip was signed by the defendants, acknowledging the signing of a negotiable note, and that on the faith of such acknowledgment the plaintiff parted with its money, such act or conduct on the part of the defendants resulted in injury to the plaintiff, and the defendants in such case would be estopped from asserting the defense of forgery. In the case of *Corbett v. Wolford*, 84 Md. 426, in passing upon a similar prayer, it was said: "When it is stated in a prayer that the plaintiff is entitled to recover, provided the jury find certain enumerated facts, it has been uniformly held that the effect of the prayer is to withdraw from the jury all other facts than those mentioned. It was so declared in *Riggin v. Patapsco Insurance Company*, 7 H. & J. 280; and also in *Bosley v. Chesapeake Ins. Co.*, 3 G. & J. 462; *Adams v. Capron*, 21 Md. 205; *Haines v. Epply & Pearce*, 41 Md. 234, and in every other case where the question has been raised. If the jury would be justified in drawing from the facts excluded from the prayer a conclusion different from that which the prayer requires them to find, it is a manifest corollary from the ruling just mentioned that it would be error to grant such a prayer. The cases just cited maintain this position." See *Bank of Bristol v. B. & O. R. Co.*, 99 Md. 661; *Hodges & Leach v. Pike*, 100 Md. 694; *Orem Fruit Co. v. N. C. Ry. Co.*, 106 Md. 1; *Darrin v. Whittingham*, 107 Md. 46; *Robinson v. Silver*, 120 Md. 41; *Bluthenthal & Bickart v. May Co.*, 127 Md. 277; and other cases which might be cited. By this long line of decisions of this court, it is firmly established that the effect of the defendants' second prayer, instructing the jury that they must find for the defendants if they find their names to the note were forged, excludes from the consideration of the jury all evidence inconsistent with the facts upon which the directed verdict is predicated; and if the excluded evidence, being true, or believed by the jury to be true, would entitle the plaintiff to recover, even though forgery be proved, the plaintiff is entitled to such an instruction,

and the granting of a prayer in the form of the defendants' second prayer is erroneous.

What we have said in reference to the satisfaction slip does not apply to the letter under date of May 22nd, 1925, alleged to have been sent by the plaintiff to the defendants informing them of the purchase of the note, for the reason that, if we admit that the defendants received such a letter, which they deny, it could not create an estoppel, because, at the time the letter was written, the plaintiff had discounted the note, and since that time nothing has occurred which would constitute legal prejudice to the plaintiff. The same reasoning is applicable to the payments made on account of the contract price and credited on the note and entered on the card held by the defendants. The evidence is conclusive that these payments were made at the office of the plaintiff, not by the defendants but by Hoffmaster; but, even if they were made by the defendants, thereby tending to prove that the defendants received the letter of May 22nd, it did not result in any prejudice or injury to the plaintiff, occurring as it did after the purchase of the note, the only result from the payments being beneficial to the plaintiff in reducing the amount of the note.

We therefore conclude that there was error in granting the defendants' second prayer. We find no error in the overruling of the plaintiff's special exception to the defendants' third prayer. But for the error indicated the case must be reversed.

Coming now to the rulings on the evidence, on cross-examination the president of the appellant was asked: "Q. You stated to this jury that you paid money for this note? A. Yes, sir. Q. How much money did you pay for it, when and how?" Objection to this question was overruled and the witness allowed to answer. This constitutes the first exception. We find no error in this ruling. One of the defenses to the action was knowledge of fraud on the part of the plaintiff, and the question of whether or not the note was discounted at the usual and customary rates, or whether the discount was abnormal, we think, was permissible, as, taken

together with other facts, tending to show knowledge of fraud in its inception. In other words, the burden was on the plaintiff to show the circumstances surrounding the acquisition of the note by him, and we think the amount paid for it is an attendant circumstance which should be admitted. The second exception was to the overruling of an objection to another question asked this witness: "Q. Did you have any conversation with Mr. Twele in regard to the notes which were to be taken for the wiring of the houses at Brownsville or in that vicinity?" A portion of the defense was directed towards showing the relationship between the appellant and Twele in connection with the contracts, and notes given therefor, for the wiring of houses at Brownsville and vicinity, and we think the objection to this question was properly overruled. The third was to the court's refusal to strike out the answer by the defendants' witness Twele to the question: "Q. Was, or not, anything said by you to Mr. Polk about securing himself for the completion of this job of work at Brownsville? A. Yes, sir. Q. What was said?" Mr. Polk was the president of the appellant. This answer was in respect to a conversation before the note was purchased, and was admissible for the reasons stated in respect to the second exception.

The fourth exception was to the overruling of an objection to a question asked the witness Twele, whether the proportionate amounts received by the witness and Willoughby for other contracts in the vicinity of Brownsville were the same as the witness had testified in respect to the Fouch contract. This witness had testified without objection that out of the Fouch contract Willoughby was paid $119.95 and the appellant had kept $101.14. The purpose of the question objected to was to ascertain whether the appellant retained in the same proportion money derived from other contracts in that vicinity. We see no objection to that question.

The sixth, seventh, eighth, and ninth exceptions were based on objections to testimony offered by the defendants of other persons in the same vicinity giving alleged notes for similar contracts made with Twele. In order to supply the homes of these witnesses with electrical current, it was necessary to

erect the pole line spoken of in this case. They testified to having signed similar contracts as the appellees, but all denied having signed any notes. The appellant holds notes purporting to have been signed by these witnesses, given in pursuance of their contracts. Ordinarily, the fact that A's name was forged to a note is not admissible as tending to prove that B's name was forged; but, in a case such as here presented, where the record discloses that the individual contracts for the electrifying of the homes and the building of one pole line which was to supply all of them, are so closely connected one with the other, we are unable to say that the admission of this testimony was error.

*Judgment reversed, and new trial awarded, with costs to the appellant.*