KATHERINE W. COOKE *v.* REAL ESTATE TRUST
COMPANY

[No. 35, October Term, 1941.]

134

*Decided November 11, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Thomas Charles Williams*, with whom were *Israel S. Gomborov* and *A. David Gomborov* on the brief, for the appellant.

*Howard Calvert Bregel*, submitted on brief, for the appellee.

Marbury, J., delivered the opinion of the Court.

This is an appeal from a judgment entered in the Baltimore City Court in favor of the appellee against the appellant for the sum of $263.19, with an attorney's fee for $39.47 without interest. This judgment was entered on a promissory note given by the appellant to an oil burner company known as White Heat, Inc., or order, for the same amount as the judgment. This note is payable in monthly installments with a provision that, if any installment is not paid, the entire amount will become due at the election of the holder. The note further authorizes any attorney of record to appear and confess judgment for the amount appearing due and payable, plus 15 per cent attorney's fee and costs of suit. There is a waiver of all rights of appeal and stay of execution. The note was under seal and on the reverse side of the note, there is printed an endorsement which was signed by the payee when the note was endorsed to the appellee. This endorsement constitutes an agreement by the appellee that in the event the holder receives any complaint as to the quality of the workmanship in executing the contract, which gives rise to the note, the payee will immediately adjust such complaint to the satisfaction of the maker or failing to do so, will repurchase the note paying the amount of any unpaid balance thereon. The note was endorsed "without recourse otherwise." The note was dated September 29, 1939, and was obtained, under circumstances hereafter set out, in connection with a conditional sales agreement entered into between the appel-

lant and White Heat, Inc., under date of September 22, 1939. This sales agreement was in the form of an order signed by the appellant to White Heat, Inc., to furnish an oil burner in a building located at 3015 Belmont Avenue, Baltimore, Maryland, for the sum of $239.19 and carrying charges. This order, which was accepted by White Heat, Inc., contains a statement that the burner is guaranteed to heat the boiler to its full rated capacity and if it fails to do so, the burner will be removed and all payments refunded. There was attached to this, a manufacture's guarantee by White Heat, Inc., for the replacement of any defective parts, either in material or workmanship and for free service for one year. The additional service agreement with the guarantees was assigned to the appellee on September 29, 1939. There was also delivered to the appellee a certificate of satisfaction dated September 28, 1939 and signed by the appellant, certifying that she had issued the note, and that the articles had been delivered and installed on her premises in a satisfactory manner.

The case was instituted on February 1, 1940, by the filing of a narr, warrant of attorney, and promissory note. After various legal skirmishes had ensued, the case came before the court below on the appellant's motion to strike the order to docket the case from the files, and to strike from the files the appearance of an attorney for the appellant, which had been entered in accordance with the authority given in the note and also on the appellant's motion to deny the application of the appellee for a judgment by confession, and on the motion of the appellee for a judgment by confession. The court below, after taking testimony, denied the two motions of the appellant and entered a judgment by confession, from which this appeal was taken.

The evidence in the record, offered on behalf of the appellee, shows that the appellee received from White Heat, Inc., an application from the appellant, and on September 29, 1939, paid White Heat, Inc., $238 for her note, which was endorsed by White Heat, Inc., and de-

livered to the appellee. Before making the payment, the appellee insisted upon and received the customary satisfaction slip signed by the appellant. The contract was assigned and delivered to the appellee at the same time. The note was attached to the contract. The note was endorsed without recourse on the form printed on the back. There is some dispute between the appellant on the one side, and the appellee, and the court below on the other, as to the question of who presented the form of the note. The appellant claims that the testimony should indicate that the form of the note was presented by the appellee, while the appellee and the court contend that that the note was presented by White Heat, Inc. All of this evidence was given by the Vice-President of the appellee. Mr. Wilhelm, the President of White Heat, Inc., who made the agreement with the appellant, was not called to testify either by the appellant or the appellee.

The appellant was the only witness called in her own behalf and she stated that she lived at 3015 Belmont Avenue, and taught night school, and Mr. Wilhelm came to see her to sell her an oil burner. She decided to buy it and signed a contract with him, after the guarantees had been fully pointed out to her. After all this had been done and the contract had been put in the pocket of Mr. Wilhelm and a yellow copy given to the appellant, Mr. Wilhelm pulled out two little slips of paper, which the appellee did not read, and asked her to sign "these two receipts." She said she had not received any thing yet, and he said this was the usual procedure, and she signed the receipts, not paying any attention to them. This was on the same night she signed the contract. Mr. Wilhelm put the slips back in his pocket. She stated that one of them she signed had nothing but her name written on it, and she did not read what was printed on it. These two papers were identified by the witness as the satisfaction slip and the note sued on. The appellant did not see Mr. Wilhelm for about two weeks, but the man came the next day to put things in the cellar, this being on a Saturday. On Monday they began work. Sometime during that week the burner

was installed, finishing on September 30th. The oil came on October 2d and the furnace was started. Two or three days later the appellant received a letter from the appellee sending her an account book to present at its office when making payments on the loan. She called the Vice-President of the appellee at once, and told him that the furnace was acting terribly, and she wanted it taken out. Prior to her call to the appellee, she had told Mr. Wilhelm that the furnace was not satisfactory. After her conversation she went down to see the appellee, and saw the note she had signed, which was the first time she knew there was such a note. The burner was not satisfactory. She sent Mr. Wilhelm a letter demanding that it be removed, notified the appellee to fix it, and did not make any payments on it. At the time she saw the Vice-President of the appellee, he said that he would see that Mr. Wilhelm would make the burner satisfactory. He called Mr. Wilhelm up in her presence, and so told him. Mr. Wilhelm did not make it satisfactory, although he tried to. The witness further testified that she can, of course, read, but that she did not read the receipts, although she read the contract.

On this state of the record, the appellant contends that the lower court had no right to extend the judgment without giving the appellant the right to have a jury trial, because the note was obtained from her by fraud, it is non-negotiable, and the conditional sales contract assigned to the appellee simultaneously with the note contained a provision, by which, if the oil burner did not heat properly, the money would be refunded, and the uncontradicted testimony was that the oil burner did not heat properly.

As the case comes before us we must take the uncontradicted testimony of the appellant as to the circumstances surrounding the execution of the note and the satisfaction slip. This testimony shows without any question that her signatures to these papers were obtained by fraud of the most flagrant character. The President of the oil burner company first talked her into

buying an oil burner, showed her the contract, and pointed out the features of it which guaranteed proper installment and maintenance of the burner, and she read this over and signed it and got a copy of it. Under this contract she was to pay for it in monthly installments and if the burner failed to heat her boiler to its full rated capacity, it was to be removed and all payments refunded. Such a contract would sound reasonably safe to anyone. The subsequent proceedings, however, indicate an entirely different attitude on the part of the President of the oil burner company. He secured the signature of the appellant to a note promising to pay for a burner, which had not been installed, and her signature to a slip saying that the burner was satisfactory, when as a matter of fact, she could not know this, because it had not been installed. If this occurred as testified, it can only be described as a most reprehensible fraud. It was just this sort of dealing, which led to the passage of the Act of 1941, Chapter 851, regulating retail installment sales. Had that act been in force at the time of the making of this contract, the appellant would not be in the position she now is.

Assuming, therefore, the presence of fraud in the obtention of the note, which fraud was, however, according to the testimony, actually unknown to the appellee at the time it purchased the note, how are its rights against the appellant affected?

It has been a number of times held by this court, in conformity with the general rule elsewhere, that knowledge of the terms of an executory contract between the maker of the note, and the payee, is no defense to a holder of the note, who obtained the same in good faith and for value and without knowledge of any breach at the time of the purchase of the note. The mere knowledge of the terms of the contract does not place upon the bona fide holder any obligation to see whether those terms have been carried out, nor is it sufficient to put him on notice of possible fraud in the inception of the contract. Cases in this court so holding are among others, *Black v.*

140

■■■■■■■■■■■■■■■■■■■■■■■■■

*First National Bank,* 96 Md. 399, 54 A. 88; *Shpritz v. Baltimore Trust Company,* 151 Md. 503, 135 A. 369, and *Home Credit Company v. Fouch,* 155 Md. 384, 142 A. 515. In the last named case, which was an action by a finance company against the makers of a note, it was held that the evidence as to fraud in the transaction between the original parties was sufficient to place the burden of proof on the plaintiff to show that it became the holder of the note before it was over-due, in good faith, for value, and without notice of any infirmity and defect in the title of the person who negotiated it to the plaintiff. The uncontradicted testimony taken on the motions in this case shows clearly that the appellee sustained that burden of proof, and that, so far as the question of fraud in the inception of the note was involved, it took without notice and was, therefore, entitled to the privilege of a holder in due course.

The appellee not only took the note, but at the same time took an assignment of the contract. It knew that the note was given in pursuance of that contract, and thereby its remedies on the note became intermingled with the provisions of the contract. Had it taken the note without the contract, it would not have been bound by the latter, but having taken the contract along with the note, it became the purchaser of the note and of the contract. It is obliged to look to the contract to see what its remedies are. In this instance the maker of the note made no payments, insisted that the oil burner did not heat, and declined to carry out the contract because of this fact. In such a contingency the contract provided that if the burner failed to heat, it would be removed, and the payments refunded. If the burner did heat, of course, then judgment could be entered. If the burner failed to heat because it was not operated in accordance with instructions, then that was not the fault of the oil burner company, or the appellee, and the judgment could be entered, but if the burner failed to heat and the company could not fix it, as the appellant testified, then the appellee's remedy was to take it out.

In the case of *C.I.T. Corporation v. Powell,* 166 Md. 208, 170 A. 740, a soda fountain company had sold to Powell a soda fountain getting a promissory note payable in installments. The C.I.T. Corporation, a finance company, acquired the note and also the contract. When Powell stopped paying his installments, the finance company took the soda fountain, sold it, credited Powell with the net proceeds, and had a confessed judgment entered up for the balance on the note. The contract provided that the seller could pursue in the alternative any one of three remedies. He could take the property and cancel the contract, he could recover the unpaid balance of the note, or he could pursue any other remedy. The finance company elected to follow the first remedy and then attempted to collect the balance on the note. This court said that the warrant of attorney in the note was not applicable in such a case, that it related to one of the other alternative remedies, that the attorney who appeared for the defendant and confessed judgment, confessed it without authority, and that the judgment was improperly entered.

In the case before us the contract provides that the remedies shall be cumulative and not alternative, but we do not regard that as changing the situation, where the only remedy provided in the contract, in the case of failure of the burner to heat, is to remove it, and to refund all the payments made. In such a case, if the note had been paid in full, the appellee could not be permitted to sue to get back the money it had already refunded. By the same token, it cannot be permitted to sue for that money, which it would have to refund, if the burner proved unsatisfactory. Where the note and contract are assigned together as part of the same transaction, and the contract sets out one specific remedy in certain contingencies, the holder of the note can use only that remedy in such contingencies. He cannot disregard the contract, which has become his, and sue on the note, which is only part of the papers assigned to him.

It is a well-recognized rule evidenced by many decisions, both in this State and in other jurisdictions, that where a note is given, coupled with a collateral agreement, and the note is assigned with or without agreement, the holder of the note is entitled to recover against the maker in spite of any failure of the conditions of the collateral agreement. These decisions are based on the necessity of preserving the trade uses in negotiable paper. They are put upon the ground that, in the absence of any knowledge of a breach of any condition of an agreement by the holder of the note at the time of his taking, he thereby becomes a bona fide holder in good faith. Defenses arising subsequently, which might be invoked against the payee of the note, cannot be pleaded against him.

These cases, however, are readily distinguishable from the case before us. In this case, when the appellee acquired the note, it also acquired a contract, which limited its rights in case of the failure of the thing contracted for. By accepting the contract, it accepted the obligations of the assignor, as well as its rights. It is not one entity holding the note and another entity holding the contract. It acquired both at the same time. Both are held by it together, and its remedies in both are restricted by the provisions of the contract. That being the case, it is subject to any conditions in the contract which prevent it from suing on the note. The warrant of attorney. in the note does not give authority to confess judgment under these circumstances, and the judgment, confessed without authority, must be stricken out.

In the case of *International Finance Corporation v. Calvert Drug Company*, 144 Md. 303, 124 A. 891, 892, 33 *A. L. R.* 1162, the Drug Company had agreed to handle certain goods of the Reolo, Inc., and to issue to it non-negotiable acceptances to become due and payable, when the goods were sold. After two of these acceptances were issued, and some goods were shipped, Reolo, Incorporated sold the acceptances to the International Finance Corporation. None of the goods were sold by

the Drug Company, and no more were shipped to them. When the acceptances came due, they were not paid, and were in due course protested and sued on. The case involved the right of the Drug Company to show the contract as a defense to the payment of the acceptances. The acceptances, signed by the Drug Company, read, "Accepted for payment as per Reolo contract." This court said: "* * * we have reached the conclusion indicated above that the words 'as per contract' are embodied in the acceptance and so related to and connected with it that they must of necessity qualify it, and that they in effect make the contract to which they refer so much a part of the acceptance as to impose upon the holder the duty of ascertaining, before purchasing or discounting the bill, that it is payable under the terms of the contract, which, in other words, is to say that they render the acceptance conditional and non-negotiable. That conclusion seems to us to accord not only with the weight of such authority as there is upon the subject, but with the dictates of sound reason, at times referred to as 'common sense.' "

In that case the Finance Corporation was not an assignee of the contract, did not actually know its terms, and yet by the use of the words quoted, it was held that the contract became a part of the acceptances, although the latter were otherwise unconditional and negotiable in form. In the case before us, the contract is in the possession of the appellee, and it is on notice that if the oil burner, which is the subject of that contract, fails, the purchase price cannot be recovered. To that extent, therefore, the appellee holds the note subject to those provisions of the contract which restrict its use. "Notice of a condition to liability on an instrument, as distinguished from notice of an executory consideration, prevents one from taking it as holder in due course." 8 *American Jurisprudence* page 142, par. 405.

If the facts are as the appellant has stated them, she is entitled to have them presented to a jury, under proper instructions of the court. If they are found to be true,

**144**

■■■■■■■■

the appellee could not recover on its note. On the other hand, the appellee is entitled to have a jury to determine whether the facts about the heating ability of the oil burner, as related by the appellant, are true or not. If they are not found to be true, then it is entitled to have its judgment. The appellant should be permitted to file pleas, and have the case tried.

> *Judgment reversed and new trial awarded with costs to the appellant. The lien of the judgment, however, to be retained pending the final disposition of the case.*