RUTH B. STRIDE *v.* GEORGE H. MARTIN, ET AL.

[No. 19, January Term, 1945]

*Decided March 2, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Abraham A. Light* for the appellant.

*J. Cookman Boyd, Jr.,* for the appellees.

MARKELL, J., delivered the opinion of the Court.

On February 19, 1944, the plaintiff (appellant) bought from the defendants (appellees) a used 1936 Packard automobile for $395 cash price, plus $64.40 "finance charge," $28.50 insurance and $10.55 title, tax, and transfer charges and recording fees. At that time she made a cash payment of $71.05 (including a $10.00 deposit on February 8, 1944), and traded in a (used 1936 Plymouth) car, for which she was allowed $63.80 ($135.00 for the car, less a lien of $71.20), leaving a balance of $363.60, to be paid in 12 (monthly) instalments of $30.30 each. On February 21st the defendants paid the lien on the Plymouth and got the certificate of title from the

lienor, and also began repairs and improvements to the Plymouth which cost about $200. The plaintiff had not assigned the certificate; the defendants did not ask her to do so.

The plaintiff signed a "conditional sale contract," dated February 19, 1944, between "the undersigned Seller" and "the undersigned Buyer," on a printed form prepared by counsel for the Automobile Trade Association of Maryland in triplicate, containing "instructions to dealer" to "give pink copy to buyer, retain green copy, white copy is for record" and that the form "must be made out in triplicate, all blanks filled in." The plaintiff received a carbon copy, designated "buyer's copy," bearing her signature to the contract and also to an "acknowledgment by buyer," viz.: "Buyer hereby acknowledges receipt of an exact, executed copy of this contract at time of execution hereof." She testified that she never received any other copy of the contract; this testimony is uncontradicted. One of the defendants testified that her copy was "a copy they usually give" the buyer. This copy does not bear the defendants' signature or their names. Cf. Code, 1943 Supplement, Art. 83, Sec. 117(a). It contains unfilled blanks for mention and description of the traded-in car [cf. Sec. 117(a) (4)], for the time of the instalment payments [cf. Sec. 117(a) (10)], for "date of signature of buyer," name and signature of seller and addresses of both [cf. Sec. 117(a)], besides several correct figures (e. g., "finance charge" and cost of insurance) in wrong blanks [cf. Sec. 117 (a) (6) (9)].) There is no evidence that the plaintiff was prejudiced by the fact that the copy received by her was not "signed by the seller."

The plaintiff soon became dissatisfied with the Packard. After taking it back to the defendants several times for correction of alleged defects, on February 24th she left it with the defendants and asked for "her money back" and the Plymouth. The defendants refused to comply with her request, but did not tell her they had made repairs or improvements on the Plymouth. She did not

then mention the Retail Instalment Sales Act. On February 28th they wrote her that they had "repossessed" the Packard "as of February 26, 1944," and that "to redeem it" she "must pay off the entire balance of $363.60." As she was not then in default, they say this letter was a "mistake"—which they did nothing to correct. She consulted counsel and demanded, under the Retail Instalment Sales Act, a refund of all payments and deposits made. On March 11th the defendants' counsel wrote the plaintiff's counsel that "there has been no departure from any law which entitles your client to the action demanded"; the letter did not mention the Plymouth. On March 21st the defendants wrote the plaintiff that she had "defaulted" in her "first note payment" on the Packard. Later they sold the Packard for $395.

On April 24th the plaintiff brought suit under the Speedy Judgment Act for $134.85 (the cash payment of $71.05 plus the allowance of $63.80 for the Plymouth), claimed under the Retail Instalment Sales Act (Art. 83, Sec. 116, Acts of 1941, Ch. 851). The defendants disputed the whole claim. Trial before the court without a jury resulted in a verdict and judgment for the defendants, from which this appeal is taken.

The Retail Instalment Sales Act provides:

"116. (Form and Delivery of Instalment Sale Agreements.) (a) Every instalment sale agreement shall be evidenced by an instrument in writing containing all of the agreements of the parties. It shall be signed by all the parties before the seller delivers to the buyer any of the goods covered by the agreement.

"(b) At or before the time the buyer signs the instrument, the seller shall deliver to him an exact copy of it. If that copy was not executed by the seller, then unless the seller within fifteen (15) days after the buyer has signed, delivers to him a copy of the instrument signed by the seller, the agreement and the instruments signed by the buyer shall be absolutely void without any action by the buyer, and the seller shall immediately refund to the buyer all payments and deposits theretofore made.

"(c) Until the buyer signs an instalment sale agreement and receives a copy of it signed by the seller—

"(1) The buyer or prospective buyer has an unconditional right to cancel the agreement or prospective agreement and to receive immediate refund of all payments and deposits made on account of or in contemplation of the agreement; a request for such refund shall operate to cancel the agreement or prospective agreement.

\*    \*    \*    \*    \*    \*

"(d) Any written acknowledgment of delivery of a copy of an instrument shall be printed in 12-point bold type or larger and, if contained in the agreement, shall be printed immediately below the signature to the agreement and shall be independently signed.

\*    \*    \*    \*    \*    \*

"135.   (Waivers by the Buyer.)  No act, agreement, or statement of any buyer in any instalment agreement, shall constitute a valid waiver of any benefit or protection under the provisions of this sub-title.

"136.   (Violations of Sections 116, 117, 118.)   (a) Whenever an instalment sale agreement does not contain the material required by Sections 116 and 117 of this sub-title or the seller fails to deliver a copy to the buyer, no seller or holder of such agreement shall collect or receive any finance, delinquency or collection charge from the buyer, except that a written acknowledgment of the delivery of the contract by the buyer pursuant to Section 116 shall be conclusive proof of such delivery as between the buyer and any assignee of the instalment agreement, without actual knowledge to the contrary.  \*  \*  \*"

At the argument counsel differed in their interpretation of the trial court's "brief statement of the grounds of its decision." General Rules of Practice and Procedure, Trials, Rule 9(a). We have considered all grounds suggested by the trial court or by counsel, but we are unable to concur in the conclusion.  This Court "may review upon both the law and the evidence" and "may affirm, re-

verse, modify or remand, as in appeals from equity."
Rule 9, *supra*.

The Retail Instalment Sales Act was enacted in 1941 after extended consideration and investigation. Joint Resolution No. 8 of 1939 directed that the subject be investigated by the Legislative Council, who were to report their findings to the next regular session of the General Assembly. The Council referred the matter to its Research Division, which made a study and a report indicating that legislation was desirable. The Council, after a hearing and further consideration, had a bill prepared and recommended its passage. The Retail Instalment Sales Act is the bill submitted by the Council, with amendments.

The Research Report (No. 6, September, 1940) reviews regulation in other jurisdictions, especially recent legislation, generally similar but differing in details, in Indiana, Wisconsin, Massachusetts, Michigan and England. Indiana, Retail Instalment Sales Act, Acts of 1935, Ch. 231, Burns Indiana Statutes Annotated, Title 58, Ch. 9, Secs. 59-901 *et seq.;* Wisconsin, Acts of 1935, Ch. 474, Wisconsin Statutes (1941) 218.01; Massachusetts, St. 1939, c. 509, Annotated Laws of Massachuetts, c. 255, Secs. 11-13H; Michigan, Motor Vehicle Retail Instalment Sales Contracts, Act 305, 1939, Michigan Statutes Annotated, Secs. 19.415(1) to 19.415(14) ; England, Hire-Purchase Act, 1938 (1 & 2 Geo. 6, c. 53), Halsbury's Statutes of England, Vol. 31, p. 659. This legislation reflects the view that "improvident and careless consumers who buy on the instalment plan need legal protection" (Report of Committee on Consumers Credit, Massachusetts, 1936), and that without such protection "in the usual case the buyer probably is discouraged from reading the contract and might not fully understand its terms even if he did read it." This legislation aims to eliminate "contract abuses" by requiring the contract to be in writing, to be delivered to the purchaser within a definite period, to contain certain information and not to contain certain provisions. Research Report No. 6. Thus

the Maryland act aims not only to prevent actual frauds (*Cooke v. Real Estate Trust Co.*, 180 Md. 133, 139, 22 A. 2d 554), but to close avenues to fraud.

The legislative history of the act, and both the similarities and the differences between such legislation in different jurisdictions, indicate that the words of the act were chosen with care. Section 116(b) and (c) (1) are more explicit—more drastic perhaps—than corresponding provisions in other jurisdictions. This Court cannot mitigate these provisions by assuming a dispensing power not conferred by the act (*cf. Hire-Purchase Act, 1938*, Sec. 2, *supra*), or by creating exceptions or artificial estoppels which would shift upon the buyer the seller's responsibility for neglect to comply with statutory requirements designed for the buyer's protection.

It is not necessary to decide whether the words of the plaintiff's acknowledgment of "receipt of an exact, executed copy of this contract at the time of execution hereof" mean "executed by some party" or "executed by all parties," *i. e.*, whether they mean less or more than "executed by the seller." Except in favor of an assignee without knowledge, the acknowledgment is not conclusive. The contract itself (on which the acknowledgment was signed) shows that it was not executed by the seller "at time of execution" of the acknowledgment.

The defendants could not, by making repairs or improvements on the Plymouth, prevent rescission or "cancellation" of the contract of sale of the Packard. The plaintiff sued, not for return of the Plymouth but for "refund of all payments and deposits," including the "trade-in allowance" of $63.80 for the Plymouth. The Act requires recital of the "down payment, whether made in cash or represented by the agreed value of goods or both." Section 117(a) (4). The contract accordingly treats the "trade-in allowance" as part of the "down payment," *i. e.*, as cash from sale of the Plymouth. The defendants cannot complain of the plaintiff's willingness to treat the sales of the Packard and the Plymouth as separable. It is not necessary to consider questions

which would have been presented if the plaintiff had sued for return of the Plymouth.

The defendants are not, by their neglect to obtain an assignment of title to the Plymouth, absolved of neglect to comply with the act. Presumably such an assignment is to be had for the asking; if not, the defendants (upon payment of the judgment in the instant case) will have whatever remedies they would have had if the act had not been passed.

On the facts, under the plain words of Section 116(c) of the act the plaintiff is entitled to recover "all payments and deposits made," including the "trade-in allowance." We leave open any questions as to the construction or application of Section 116(a) or (b) or 117 in the instant case or on different facts. *Cf. Lehan v. North Main Street Garage*, 312 Mass. 547, 45 N. E. 2d 945, 144 A. L. R. 1100 and annotation.

> *Judgment reversed and judgment entered for the appellant for $134.85 plus interest from April 24, 1944 to date of entry of judgment, with costs and a counsel fee of $50.*