ASSOCIATED ACCEPTANCE CORP. *v.*
BAILEY ET UX.

[No. 33, September Term, 1961.]

*Decided October 23, 1961.*

The case was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Albert B. Gerber,* with whom was *Hyman K. Cohen* on the brief, for the appellant.

No brief and no appearance for the appellee.

SYBERT, J., delivered the opinion of the Court.

The question presented in this case is whether a Maryland retail installment sales contract is void in the hands of an assignee without notice because the copy furnished to the buyers by the seller was not completely signed by the seller, although the copy of the contract delivered to the assignee by the seller was completely executed and contained an acknowledgment by the buyers that they had received a "true, executed copy" of the contract at the time they signed it.

The facts are not disputed. The appellant, Associated Acceptance Corporation (plaintiff below), is a licensed sales finance corporation of the Commonwealth of Pennsylvania. In the usual course of business it purchased from Pen Del Farms of Maryland, Inc., a Maryland retail installment sales contract dated September 25, 1956, completely executed on its face, evidencing the sale of a freezer and food plan by Pen Del Farms to the appellees, Mr. and Mrs. Bailey (defendants below), for the cash price of $715.55. The contract showed a time balance of $822.36 and required payments in monthly installments commencing on November 24, 1956.

In the copy of the contract handed to the buyers at the time they executed it, the following had been inscribed by hand on the line provided for the seller's signature: "Pen Del Farms of Md., Inc." When the seller's copy of the contract was subsequently assigned to the appellant, the signature of an

authorized representative of the seller had been added immediately under the inscribed name of the corporation. Below the signatures to the contract proper, the following appears in bold print above additional signatures of the Baileys: "Purchaser acknowledges receipt of true, executed copy of this contract at time of execution hereof."

The contract was assigned by Pen Del Farms to appellant on October 15, 1956, prior to the due date of the first payment by appellees. The Baileys made two payments under the contract and then defaulted by failing to pay further installments. The appellant sued in the Circuit Court for Baltimore County to recover the amount due under the contract, and the appellees defended on the sole ground that the lack of the signature of an authorized representative of the seller on the contract at the time of its delivery to the buyers (or on a copy delivered within 15 days) rendered it void and therefore unassignable under the Retail Installment Sales Act, enacted as Chap. 851 of the Acts of 1941 and codified as §§ 128 to 153 of Art. 83, Code (1957). The parties stipulated that in connection with the assignment the plaintiff had received a "fully and properly executed copy" of the contract without knowledge of any defects in the copy which the defendants had received or of any other defects in the transaction, and that the defendants had never notified the plaintiff of any defects in their copy. The trial court held that the paper signed by the buyers did not constitute a contract because it bore no authorized signature on behalf of the seller, and that because a copy of the entire alleged contract was not given to the buyers, the contract was void. From a judgment entered for the defendants for costs, the plaintiff brought this appeal.

Section 128 of the act reads, in pertinent part:

> "(a) *Writing signed by parties.*—Every installment sale agreement shall be evidenced by an instrument in writing containing all of the agreements of the parties. It shall be signed by all the parties before the seller delivers to the buyer any of the goods covered by the agreement.
>
> "(b) *Seller to deliver copy to buyer.*—At or before the time the buyer signs the instrument, the seller

shall deliver to him an exact copy of it. If that copy was not executed by the seller, then unless the seller within fifteen (15) days after the buyer has signed, delivers to him a copy of the instrument signed by the seller, the agreement and the instruments signed by the buyer shall be absolutely void without any action by the buyer, and the seller shall immediately refund to the buyer all payments and deposits theretofore made.

"(c) *Effect of failure to deliver copy.*—Until the buyer signs an installment sale agreement and receives a copy of it signed by the seller—

(1) The buyer or prospective buyer has an unconditional right to cancel the agreement or prospective agreement and to receive immediate refund of all payments and deposits made on account of or in contemplation of the agreement; a request for such refund shall operate to cancel the agreement or prospective agreement.

\* \* \*

"(d) *Printing acknowledgment of delivery.*—Any written acknowledgment of delivery of a copy of an instrument shall be printed in 12-point bold type or larger and, if contained in the agreement, shall be printed immediately below the signature to the agreement and shall be independently signed."

Section 129 of the act establishes the disclosures which must be contained in the contract with respect to the parties, goods sold, price, terms, etc.

The appellees, relying solely upon the alleged lack of a proper signature on the copy of the contract delivered to them, did not file a brief or make oral argument in this Court. On the other hand, the appellant, at oral argument here, expressly disclaimed any reliance upon the signing of the corporate name of the seller on the purchasers' copy, without more, as being substantial compliance with § 128. Consequently, for the purposes of this case, we shall assume that the signature of the seller on the purchasers' copy was not in compliance with § 128, without deciding that question.

Rather, the appellant, as an assignee who had received a fully signed copy of the contract and had no notice of the alleged defect, relies only on § 149 of the act, which reads, in part:

"(a) *Sellers and holders not to collect any finance, delinquency or collection charge.*—Whenever an installment sale agreement does not contain the material required by §§ 128 and 129 of this subtitle or the seller fails to deliver a copy to the buyer, no seller or holder of such agreement shall collect or receive any finance, delinquency or collection charge from the buyer, *except that a written acknowledgment of the delivery of the contract by the buyer pursuant to § 128 shall be conclusive proof of such delivery as between the buyer and any assignee of the installment agreement, without actual knowledge to the contrary."* (Emphasis supplied.)

It is strongly contended by the appellant that this section creates an exception to the stringent requirements of § 128; and that where an assignee, without knowledge of any defects in the execution or delivery of a contract, becomes holder of a fully and apparently properly executed contract containing an acknowledgment of the purchaser that he received a true, executed copy of the contract at the time of execution thereof, such assignee may recover against the defaulting buyer, notwithstanding a lack of complete compliance with § 128.

It is to be noted that in this case we are not called upon to decide the validity of the contract in question as between *seller* and buyer, as was the case in *Stride v. Martin,* 184 Md. 446, 41 A. 2d 489 (1945). Clearly in an action between a seller and a buyer, the latter would be entitled to rely upon any violation of the requirements established in the act. Here, however, the question is whether the defense of inadequate signature on the part of the seller is available to the buyers as against an assignee of the seller without knowledge of the alleged defect, in view of the exception contained in § 149. We have not previously been called upon to consider the import of the exception.

Prior to passage of the Retail Installment Sales Act, installment sales in Maryland were virtually unregulated. See Research Report No. 6 of the Research Division of the Maryland Legislative Council (Sept., 1940), and the scholarly article by Bridgewater Arnold, *Conditional Sales of Chattels in Maryland,* 1 Md. Law Rev. 187. The legislative history and purpose of the act were reviewed in *Stride v. Martin, supra,* where, at p. 452 (of 184 Md.), it was said that the legislation "aims not only to prevent actual frauds (*Cooke v. Real Estate Trust Co.,* 180 Md. 133, 139, 22 A. 2d 554), but to close avenues to fraud." It is obvious that the legislature intended to protect ignorant and unwary buyers from oppressive business practices that were becoming more apparent with the rising quantity of consumer credit. To that end, the requirements in the act that the contract be in writing, that an exact copy of it be delivered to the purchaser within a definite time, that the contract shall contain certain disclosures and not contain certain provisions, are explicit and mandatory.

The legislature, however, recognized the conflict between the desire on the one hand to protect the conditional vendee from fraudulent practices and the necessity on the other hand to preserve the free flow of credit so vital to our economy, and the exception set forth in § 149 of the act would appear to be the solution provided. As in the Maryland act, the disclosure safeguards contained in the statutes of a number of States are mitigated in varying degrees as to innocent assignees by provisions with respect to the conclusiveness of an acknowledgment by the buyer of the required delivery of a copy of the contract. For a discussion of these statutes, see *Retail Installment Sales Legislation,* 58 Columbia Law Rev., 854-886. However, we have found no case in those jurisdictions analogous to the one before us.

The Maryland act has been considered by this Court in *Stride v. Martin, supra, Griffin v. Balto. Fed. S. & L. Ass'n,* 204 Md. 154, 102 A. 2d 804 (1954), and *Hudson v. Md. State Housing Co.,* 207 Md. 320, 114 A. 2d 421 (1955) (the last a case arising under the Land Installment Contract Law), but none of these cases involved the exception contained in § 149.

However, the apparent conflict between §§ 128 and 149 was alluded to briefly by way of a *dictum* in *Stride v. Martin, supra,* (a case between seller and buyer), where the Court said at page 452 (of 184 Md.):

> "It is not necessary to decide whether the words of the plaintiff's acknowledgment of 'receipt of an exact, executed copy of this contract at the time of execution hereof' mean 'executed by some party' or 'executed by all parties,' i.e., whether they mean less or more than 'executed by the seller.' *Except in favor of an assignee without knowledge, the acknowledgment is not conclusive. * * *"* (Emphasis supplied.)

The apparent contradiction between the provisions of §§ 128 and 149 presents a question of statutory construction. In resolving the issue, "[t]he court must construe the Act by giving effect to the legislative intention as expressed in the Act as a whole. It is recognized that the meaning of the plainest words in a statute may be controlled by the context. A statute should be so construed that all its parts harmonize with each other and render them consistent with its general object and scope. * * *" *Pittman v. Housing Authority,* 180 Md. 457, 463-464, 25 A. 2d 466 (1942). See also *Phillips v. Comptroller,* 224 Md. 350, 167 A. 2d 913 (1961). In light of those principles, we think that the two sections of the statute may be interpreted so as to harmonize with each other, consistent with the general object and scope of the legislation, by construing the provisions of § 128 as being subject to the exception established in § 149. In our view, little or no meaning could be ascribed to the exception unless the words in which it is framed are taken as providing that the buyer, in relation to an assignee, by his acknowledgment affirms not merely delivery of the contract, but delivery of a contract that is "pursuant to § 128," that is, a contract that has been properly executed in conformity with the act as well as validly delivered, provided the assignee does not have, at the time of assignment, actual knowledge to the contrary.

That this construction is proper is borne out by the fact

that the purpose of § 149 is to provide penalties for violations of §§ 128 and 129, expressly including failure on the part of the seller to deliver a copy of the contract to the buyer. Insertion of the exception directly into the text dealing with such matters makes it clear that it was the legislative intent to protect innocent assignees where the buyer, by his own act of acknowledging receipt of a contract "pursuant to § 128", has caused the assignee to rely on such fact. This conclusion is strengthened by reason of the fact that the buyer's written acknowledgment of receipt of the copy is made "conclusive proof" thereof.

It cannot be supposed that the legislature intended an application of the exception which would seriously hinder the free assignability of retail installment agreements and thus drastically curtail the quantity of installment credit sales. Since such sales are usually tripartite transactions between buyer, seller and finance company (Adelson, *The Mechanics of the Installment Credit Sale*, 2 Law of Contemp. Prob. 218), the problem of financing would prove insurmountable for many sellers, as well as many buyers. The large capital necessary for extensive financing necessitated the selling of the purchaser's debt to someone who could pay the dealer cash and continue unaltered the credit extended to the purchaser. This need for the continued growth of business was met by the development of the sales finance company. The important role played by the finance company in retail installment credit was recognized early in Maryland in the aforementioned Research Report No. 6. This fact was undoubtedly in the minds of the legislators when the Retail Installment Sales Act was passed, and the protection provided for the finance company in § 149 is an expression of that fact. In our view the interpretation we have adopted will best promote this objective of the legislature. *Pressman v. Barnes*, 209 Md. 544, 121 A. 2d 816 (1956).

Moreover, under the principle of common law estoppel, a buyer executing an acknowledgment of receipt of a proper copy of a contract would be precluded from relying upon a defect in the contract as against another who has acted upon the representation to his detriment. Cf. *Home Credit Co.*

*v. Fouch,* 155 Md. 384, 142 Atl. 515 (1928). It is obvious that, in including the exception set out in § 149, the legislature has merely written into the act the principle of estoppel by conduct.

We note that § 148 states that "No act, agreement, or statement of any buyer in any installment agreement, shall constitute a valid waiver of any benefit or protection under the provisions of this subtitle." We think that this section, coming as it does between § 147, which affords protection, in virtually the same words used in the exception in § 149, to innocent assignees of notes, issued as part of an installment agreement acknowledged as delivered by the buyer, and § 149, obviously does not refer to such acknowledgments by the buyer, when it speaks of an "act, agreement, or statement."

The parties stipulated that the unpaid balance due on the contract is $678.74, without claim for any delinquency charges or attorney's fees. Since it was stipulated that the lack of a proper signature of the seller on the buyers' copy of the contract is the only defect relied upon, and § 149 precludes the appellees from invoking that defense under the circumstances in this case against the appellant, as assignee without notice, the judgment in favor of appellees for costs will be reversed and judgment entered for appellant.

> *Judgment reversed; judgment entered for appellant against appellees for $678.74, with interest from March 3, 1961; appellees to pay costs.*